THE PEOPLE OF THE STATE OF NEW YORK ex rel. EUGENE M. TRAVIS, Appellant, *v.* DAVID H. KNOTT, Sheriff of the County of New York, Respondent.

First Department, February 9, 1923.

Crimes — sufficiency of information under Code of Criminal Procedure, § 145, for purpose of instituting investigation — information by deputy assistant district attorney of New York county based on information and belief and not charging any particular person with specific crime is insufficient to confer jurisdiction upon magistrate to issue subpœna for purpose of investigation — information for purpose of investigating transactions by State Comptroller's office for five years was not presented in good faith — Comptroller of State during period sought to be investigated was justified in refusing to answer questions concerning his personal investments, and his commitment for contempt was improper.

An information under section 145 of the Code of Criminal Procedure for the purpose of instituting an investigation before a magistrate of a crime committed does not require the same definiteness of statement as to the person charged and specification of the crime as is required in an information by which misdemeanors are prosecuted by the district attorney under section 742 of the Code of Criminal Procedure and subdivision 4 of section 31 of the Inferior Criminal Courts Act of the City of New York, or in a deposition upon which a warrant for arrest is issued under section 149 of the Code of Criminal Procedure. Nevertheless a magistrate does not have the inquisitorial powers of the grand jury and can act only on the presentation of a sworn information stating that a named person has been guilty of some designated crime, and the fact that the informant is a deputy assistant district attorney does not make the information an official act nor dispense with the requirements as to definiteness of allegation.

The information made by a deputy assistant district attorney of New York county and presented to a magistrate of New York city was insufficient to confer juris-

diction on the magistrate to issue a subpœna to the relator and the relator was justified in refusing to answer questions concerning his personal investmonts, and his commitment for contempt was improper, where the allegations of the information were simply that the deputy assistant district attorney had been informed by several persons, names not given and the substance or effect of their statements not set forth, and the examination of some unidentified books and documents, contents not stated, from which he believed that some person, to him unknown and, therefore, designated by the fictitious name of John Doe, had at some time within a period of five years committed one or more of numerous acts, any one of which if done would constitute a felony, but he had not been informed of any specific acts, and, therefore, he desired to examine witnesses and compel the production of books and papers to discover whether any of these acts had been committed by any person within the period of five years.

The jurisdiction to conduct a judicial investigation upon such an information was never conferred upon a magistrate in any of the States of the United States and is repugnant to our ideals of personal rights and liberties.

Furthermore, the information was not presented in good faith charging a designated crime by some person named or described but was presented for the purpose of a general investigation of the office of the relator, the Comptroller of the State of New York, for five years of his term to discover if any of the numerous acts set forth in the information which would constitute a felony had beenʸ committed within the period of the Statute of Limitations.

APPEAL by the relator, Eugene M. Travis, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of June, 1922, dismissing a writ of habeas corpus.

*George Z. Medalie,* for the appellant.

*Joab H. Banton, District Attorney* [*John Caldwell Myers, Assistant District Attorney,* of counsel; *Felix C. Benvenga, Deputy Assistant District Attorney,* with him on the brief], for the respondent.

PAGE, J.:

On or about October 2, 1920, Ferdinand Pecora presented a verified information before Hon. FREDERIC KERNOCHAN, Chief Justice of the Court of Special Sessions of the City of New York, sitting as a magistrate, wherein he stated his residence and that he was a deputy assistant district attorney of the county of New York, and that at all times thereinafter mentioned Eugene M. Travis duly held and still holds the public office of Comptroller of the State of New York, duly invested with all the powers and duties imposed by law upon such public officer; that among the said powers and duties was the power and duty of administering, investing and reinvesting certain public moneys or funds held, owned by, or in the possession of, or the property of the State of New York, designating said funds by their appropriate names. The information continues: " Upon information and belief, that on a date or dates at this time unknown to deponent, but occur-

ring in and during the years 1916, 1917, 1918, 1919 and 1920, in the City and County of New York, certain acts and transactions were committed and performed, whereby sales of certain bonds or certificates of indebtedness issued by the State of New York, and by divers cities, counties, towns and villages within the State of New York, were sold to the State of New York and were purchased by or for the account of the State of New York by and with the moneys of said State constituting the above named funds, at a price or prices and for a sum or sums in excess of the true market value and of the fair and reasonable market value of such bonds or certificates; and whereby certain moneys and property held, owned, or in the possession of the State of New York, were falsely, fraudulently, feloniously, wrongfully, unlawfully and corruptly obtained, received, converted, disposed of and paid out; and whereby certain claims, demands, bills, vouchers or accounts upon the State of New York which were false and fraudulent or which contained false and fraudulent charges, items and claims, were knowingly and feloniously, with intent to defraud, presented for audit, allowance and payment to the aforesaid Comptroller of the State of New York, and were audited, allowed and paid, in violation of the Penal Law of the State of New York.

" Upon information and belief that one John Doe (the name John Doe being fictitious, the true name of such person being to the deponent unknown) and certain other persons who are at this time to the deponent unknown, were feloniously concerned in the commission of the aforesaid acts and transactions, and deponent verily believes that the said John Doe and the other said persons can be fully identified and ascertained, and the fact of their commission of the aforesaid acts and transactions and crimes can be established by the testimony and depositions on oath, of witnesses to be produced and by documentary and other legal and competent evidence to be introduced in this proceeding;

" That the sources of deponent's information and the grounds of his belief as to the aforesaid allegations are statements made to deponent by certain persons to be produced as witnesses herein by deponent; and books, records, documents, letters and other writings in the possession of deponent or which deponent has seen and examined, and which can be produced in this proceeding.

" Wherefore, deponent prays that subpœnas be issued for the production and examination of such books, records, papers and documents as may be material, relevant and competent to establish the truth of the allegations of this information; that subpœnas be issued for the attendance of such witnesses as may be presented by deponent, or whose names will be presented by deponent; that

the testimony and depositions of such witnesses, as shall be deemed to be material, relevant and competent to establish the truth of the allegations of this information, be taken; to the end that it be determined whether the crime or crimes hereinbefore set forth, or any other crime or crimes, have been committed, and whether there is probable cause to believe that said John Doe, or any other person or persons were guilty of such crime or crimes; and whether a warrant or other process shall be issued for the arrest of said John Doe or other person or persons; or other proceedings taken against him or them, as may be provided by law and in the interests of justice."

In the proceeding based upon this information Eugene M. Travis was called by the district attorney and sworn as a witness, and certain questions were asked him relating to his personal investment of moneys for his own personal account in the purchase of stocks, bonds or other securities; and whether since January 1, 1915, when he became State Comptroller, he had purchased stocks, bonds or other securities from or through certain named brokerage firms, being interrogated specifically as to each; whether there were any brokers, firms or persons from or through whom he had purchased stocks, bonds or other securities since January 1, 1915, for his own account other than those whose names had been mentioned in the foregoing questions; whether any person or corporation which at any time since January 1, 1915, up to the present holds in trust for him or for his personal account any stocks, bonds or other securities whether they are held in the name of himself, or under the name of any other person or corporation; whether since January 1, 1915, he had purchased stocks, bonds or other securities from anybody whatsoever for his account either in his own name or in the name of any one else, for which payment had been made with funds furnished by persons other than himself; what sources of income he had had other than his salary as State Comptroller since January 1, 1915; whether at any time since January 1, 1915, he had purchased stocks, bonds or other securities for his own account either in his own name or in the name of any one else where payment for the securities, stocks or bonds was made by cash given to him by any other person than the person who gave him his salary as State Comptroller. The witness declined to answer each of these questions, as stated by himself, " on the ground that it is not pertinent, not legal and not in order in this investigation." Whereupon the court ruled that they were proper questions for the witness to answer, and directed him to answer. The witness in answer to the first question stated, " On Friday morning I read in the paper that the district attorney proposed

to ventilate my personal affairs, which have nothing to do with the purchase of bonds, and for these reasons and the fact that they have nothing to do with the purchase of bonds, I shall decline to answer any questions affecting my personal affairs. I am willing to answer anything connected with the Comptroller's office that is pertinent to the investigation that is now in progress."

As a result of the witness's refusal to answer he was adjudged in contempt of court, fined $250, and in default of payment committed. Whereupon this habeas corpus proceeding was instituted. The court at Special Term dismissed the writ.

Two questions are raised on this appeal; the first goes to the jurisdiction of the magistrate; the second to the materiality of the testimony sought to be elicited.

The appellant contends that the information is insufficient to give the magistrate jurisdiction.

The information in this proceeding is to be distinguished from that by which misdemeanors are prosecuted by the district attorney (Code Crim. Proc. § 742; Inf. Crim. Cts. Act of City of N. Y. [Laws of 1910, chap. 659], § 31, subd. 4), and from the depositions upon which the warrant for arrest is issued. (Code Crim. Proc. § 149.) The information herein is that which is defined in section 145 of the Code of Criminal Procedure: " The information is the allegation made to a magistrate, that a person has been guilty of some designated crime." While the latter does not require the same definiteness of statement as to the person charged, and specification of the crime, as is required in either of the other two, nevertheless it must be borne in mind that the magistrate does not have the inquisitorial powers of the grand jury. The grand jury can investigate to discover whether a crime has been committed and what person committed it, without any formal presentation to it. It can act on rumor or suspicion. The magistrate can only act on the presentation of a sworn information stating that a person has been guilty of some designated crime. The fact that the informant is a deputy assistant district attorney does not make the information an official act, nor dispense with the requirements as to definiteness of allegation.

The leading case in this State upon the subject under consideration is *People ex rel. Livingston* v. *Wyatt* (186 N. Y. 383, 391), in which the court said: " The deposition must set forth facts tending to show that a crime has been committed and that there is reasonable ground to believe that the defendant committed it. While the information need not go so far as the deposition, still it cannot rest wholly on information and belief, but facts enough must be stated to show that the complainant is acting in good faith and

that he has reasonable grounds to believe that a crime has been committed by some person named or described. * * * We have already pointed out the nature of the proof required in an information. Suspicion is not enough, and information and belief are not enough, unless facts are stated showing the source of the information and the grounds of belief. The information should fairly warrant the inference by the magistrate that in good faith and on reasonable grounds the complainant believes that a definite crime has been committed by a designated person. There is then a proper foundation upon which to issue subpœnas and take depositions; whereas without it the inquiry is prosecuted on the mere chance that some crime may be discovered. The statute does not permit simple hearsay to become the sole basis of such a proceeding. The highest care of the law is personal liberty, and construing the statute in the light of that principle, we think that the respondent was without jurisdiction to entertain the proceeding or to require the attendance of witnesses, because sufficient proof was not laid before him." The court further held that the proper remedy to test the jurisdiction was not by prohibition but by habeas corpus, saying (p. 394) of the witness: " He could lawfully decline to attend, or to be sworn, or to answer any question. Any attempt to punish him would have been unlawful and he would have had an absolute right to relief through this great historical writ, which is the most important process known to the law. If relief were refused in the first instance, there was a right of appeal to the Appellate Division and to the Court of Appeals, so that ultimate if not immediate justice was certain."

It is instructive to note that Judge CHASE concurred in the opinion, except that he was of opinion " that it is intended by section 145 of the Criminal Code to make a distinction in the certainty with which crime and the person committing the crime is described. * * * It should not necessarily be fatal to an information if it does not name or designate the person who committed the crime. I prefer to hold that an information alleging that a designated crime has been committed by a person is sufficient to require the taking of depositions if it in good faith shows that the person who committed the crime cannot be definitely named or described." But none of the other judges concurred in Judge CHASE's opinion.

The same principle was declared in *People ex rel. Laird* v. *Hannah* (92 Hun, 476, 478), in which the relator was committed for contempt in refusing to answer a magistrate's question, when subpœnaed as a witness in a proceeding based upon an information charging " that the game laws of the State had been violated within the

county by divers persons to him [complainant] unknown." The relator was sworn in the proceeding which was entitled *People* v. *John Doe and Others.* The court said: " A careful examination of the record shows very clearly that the information upon which the justice acted was wholly insufficient to confer jurisdiction upon him, and that consequently he was without authority either to subpœna the relator or compel him to testify, or to commit him for contempt."

In *People ex rel. Sandman* v. *Tuthill* (79 App. Div. 24, 26) the information was made upon information and belief by a special agent of the Excise Department of the State, " that on or after the 1st day of May, 1901, at the town of Riverhead in said county of Suffolk, one David Sandman and other persons of said town * * * did commit the crime of misdemeanor in that they did at the time and place above named, unlawfully, wilfully and knowingly violate the Liquor Tax Law of the State of New York." Subpœnas were issued and the relator Samuel Sandman was examined and committed for contempt in refusing to answer certain questions. The court said: " The question presented is whether the information on which the proceeding before the justice of the peace was instituted and conducted was sufficient to give jurisdiction. There can be no reasonable question upon this point; the information does not comply with the letter or spirit of the statute. * * * The statute contemplates that the information shall set forth that a definite crime has been committed, not with all of the particularity of an indictment, but with sufficient definiteness so that the magistrate may know that some particular offense against the law is charged. * * * To make a general allegation that some one has been guilty of a violation of the Liquor Tax Law, a general statute providing the details regulating the sale of intoxicating liquors, and then to permit a general inquiry of the defendant and others as to the entire details of the conduct of the liquor business, would be an act so entirely hostile to our system of jurisprudence as to shock the sense of justice of English-speaking people generally. * * * The information must set forth that ' a crime ' has been committed in order that the magistrate shall have jurisdiction, and we are clearly of opinion that the information before the justice in this proceeding did not meet the requirements of the law."

The learned district attorney relies upon *People* v. *Hicks* (15 Barb. 153) as an authority directly sustaining the information in this case. In so far as that case is in conflict with *People ex rel. Livingston* v. *Wyatt* (*supra*), it must be deemed to have been overruled. The *Hicks* case is, however, distinguishable from the instant

case. The complainant in that case was the comptroller of the city of New York, and although allegations were made upon information and belief, they were founded upon the books and papers in his possession in his official capacity, from which information he believed frauds, criminal in their nature and character, had been committed upon the city. "He had also stated the particular character of one of the frauds charged, as a specimen of the nature and character of the others." In the instant case the nature of the books and documents from which the complainant derived his information is not disclosed. They could not be the official records of the district attorney's office. The information is pure hearsay, the books and papers are of no higher evidence than the statement of the persons, whose names are not disclosed, nor is the substance of their statements to him given. There is not a single act described from which the nature and character of the frauds charged can be determined.

The learned district attorney relies also upon *Blodgett* v. *Rice* (18 Hun, 132, 133). The excerpt quoted in respondent's brief from the opinion, taken from the context, would seem to be an authority favorable to his contention. The entire opinion, however, discloses that it is not. The action was against a justice of the peace for false imprisonment. An information, or complaint as it was then styled, was laid before the magistrate, stating "that certain goods of the value of more than twenty-five dollars were, on or about the 14th day of April, 1874, at the town of Jewett, Greene County, N. Y., stolen from Division No. 209 of the Sons of Temperance, 'and that [the complainant] has probable cause to suspect and does suspect that Frederick Blodgett * * * did feloniously steal, take and carry away the said goods, chattels and property, in manner and form, and at the time and place aforesaid.'" The court held that these allegations were sufficient to confer jurisdiction on the magistrate to issue subpœnas and examine witnesses (citing *People* v. *Hicks, supra*), but were insufficient to justify the magistrate in issuing a warrant for the arrest of the accused.

The district attorney also cites *Swart* v. *Rickard* (148 N. Y. 264), which was an action for false imprisonment and malicious prosecution. The court at Trial Term refused to submit the cause for false imprisonment to the jury, and the jury returned a verdict for the defendant on the issue of malicious prosecution. The General Term (74 Hun, 339) reversed on the sole ground that it was error to refuse to submit the cause for false imprisonment. The complaint or deposition in pursuance of which the warrant was issued was made by the defendant; hence if it was sufficient to give the magistrate jurisdiction, the defendant was not liable for false imprisonment.

The court said (p. 268): " Therefore, the precise question to be determined is whether the deposition tended to establish the guilt of the plaintiff. The facts stated in the deposition are to the effect that the offense of burglary was committed by breaking into the defendant's store in the night time, and that about the time of the commission of the offense the plaintiff and others were prowling around and near the premises. The general definition of the word ' prowl ' is: ' To rove or wander over in a stealthy manner; to collect by plunder; to rove or wander stealthily, as one in search of plunder.' When we give full effect to this word, and accord to it its general meaning, it becomes quite clear that the deposition was sufficient. It disclosed that an offense had been committed * * * in the night, and that at or near the time of its commission the plaintiff was roving stealthily around the premises in search of prey or plunder. We think this statement of facts was sufficient to justify the magistrate in determining that there was reasonable ground to believe that the plaintiff was guilty of the crime charged. In determining the sufficiency of this deposition, it should be borne in mind that the proceeding before the justice is attacked collaterally, and, therefore, that great latitude of construction should be indulged in."

In *People ex rel. Willett* v. *Quinn* (150 App. Div. 813, 817), also cited by the district attorney, the court refused to pass upon the sufficiency of the information or depositions, saying: " In such information facts enough must be stated to show that the informant is acting in good faith, and that he has reasonable grounds to believe that a crime has been committed by some person named or described. (*People ex rel. Livingston* v. *Wyatt,* 186 N. Y. 383.) If such is not the case, then the subpœnas issued are void and the witnesses summoned are under no obligations to obey the same. If under such circumstances an attempt should be made to punish them for disobedience, an adequate remedy may be obtained by them through the writ of habeas corpus. (*People ex rel. Livingston* v. *Wyatt, supra.*) * * * The objection now under consideration has ceased to be of any importance for reasons hereinafter stated. * * * No application was made for such relief. On the contrary, relators appeared, participated in cross-examining the People's witnesses and made a statement. If, when the examination was finally completed, and after hearing the statement of the defendants, it then appeared that the crime mentioned in the depositions or any other crime or crimes had been committed, and that there was sufficient cause to believe the defendants guilty thereof, the magistrate had jurisdiction to hold them to answer for the action of the grand jury. (Code Crim. Proc. § 208.) The commitments cannot thereafter be successfully attacked because at

some prior stage of the proceeding the magistrate may have exceeded his jurisdiction or the proofs were insufficient."

The district attorney also cites *People ex rel. Brown* v. *Tighe* (146 App. Div. 491), to what purpose is not evident, for the court reiterated the principle laid down in *People ex rel. Livingston* v. *Wyatt* (*supra*) but reversed the order of the Special Term on the ground that the depositions were not signed by the witnesses and hence the magistrate was without jurisdiction to issue a warrant of arrest. *McKelvey* v. *Marsh* (63 App. Div. 396), also cited by the district attorney, is not an authority in support of his contention. The information was treated as a deposition and warrant of arrest issued upon it. It charged a named person with violation of section 486 of the Penal Code of the State of New York by setting fire to a designated dwelling house in the night time in which there was at the time a human being. The information was made by a fire marshal, but stated that it was founded upon information received from the sworn statement, which was not produced, of the person who was at the time in the building. The court said (p. 400): "It may be conceded that the deposition would have been good had it terminated with the positive allegation that the plaintiff had committed the crime charged in violation of  section 486 of the Penal Code.* But when to this positive allegation was added a statement indicating that the affiant had no personal knowledge whatever of the occurrence, but was making the charge solely upon information, and that information was exhibited to be mere hearsay, it is plain that there was no real evidence presented to the magistrate upon which a judicial determination could be lawfully predicated, and that he was, therefore, without jurisdiction to imprison the accused." The district attorney also cites *People ex rel. Laird* v. *Hannah* (92 Hun, 476), which we have heretofore discussed as an authority against his contention.

I have reviewed all the authorities of appellate courts cited by the district attorney, and it appears that the sufficiency of this information is to be tested by the principles laid down in *People ex rel. Livingston* v. *Wyatt* (*supra*), and that the cases cited by the district attorney show no exceptions to those principles.

Applying these tests to the information under consideration, it is evident that it is wholly insufficient to confer jurisdiction upon the magistrate.

No designated crime is alleged to have been committed. It is alleged generally upon information and belief that on dates unknown but occurring during the years 1916, 1917, 1918, 1919 and 1920,

---

* Now Penal Law, § 221.— [Rep.

certain acts and transactions, not specified, were committed and performed whereby all the different acts set forth in sections 1863, 1864 and 1872 of the Penal Law as constituting felonies are alleged in the words of the sections, whether therein stated disjunctively or conjunctively, and without a statement of a single fact that would tend to show the commission of any of said acts.

There is no person named or described in the information. The use of the fictitious name of John Doe, without any description of the person who is charged but whose real name is not known, is not sufficient.

The allegations of the information are simply this, that Mr. Pecora has been informed by several persons, names not given and the substance or effect of their statements not set forth, and the examination of some unidentified books and documents, contents not stated, from which he believes that some person, to him unknown and, therefore, designated by the fictitious name of John Doe, has at some time within a period of five years committed one or more of numerous acts, any one of which if done would constitute a felony, but he has not been informed of any specific acts, and, therefore, he desires to examine witnesses and compel the production of books and papers to discover whether any of these acts have been committed by any person within the period of five years. The jurisdiction to conduct a judicial investigation upon such an information was never conferred upon a magistrate in any of the States of the United States and is repugnant to our ideals of personal rights and liberties.

There is in this information and the proceedings under it a more insidious vice. It is evident that the general allegations of criminal acts were charged against one person known to the informant, and that was Eugene M. Travis, then and for the period of time stated in the information the Comptroller of the State of New York, who was charged with the duty of administering, investing and reinvesting the funds of the State of New York mentioned in the information; also of auditing, allowing and paying claims and demands upon the State. If any act was done as alleged which by reason of sections 1863 or 1864 of the Penal Law was felonious, they must have been committed by Eugene M. Travis. The proceeding, therefore, was not in good faith presented, charging a designated crime by some person named or described, but for the purpose of a general investigation of the office of the Comptroller of the State of New York for five years of the term of Eugene M. Travis, to discover whether any of the numerous acts set forth in the information which would constitute a felony had been committed within the period not barred by the Statute of Limitations.

If this was not the purpose of the investigation, of what possible pertinency or materiality could the questions propounded to Mr. Travis as to his personal dealings, and the sources of his income other than his salary, have had? If the purpose of the questions was to show that by reason of the purchase of bonds for the several funds at a price greater than the market, or by audit, allowance and payment of false and fraudulent claims and demands against the State, he had feloniously personally benefited, then he could not have been subpœnaed and compelled to testify against himself in the criminal proceeding, and the magistrate had no power to compel him to answer, for the entire proceeding would be void. (*Matter of Both,* 200 App. Div. 423, 426.) If the person charged was not Eugene M. Travis, then the questions sought to elicit information as to his personal affairs had no relevancy or materiality to the subject-matter of the investigation, and he could properly refuse to answer them, and the magistrate could not compel him to answer them.

Therefore, the committal of the witness for a contempt of court was beyond the power and jurisdiction of the magistrate, and the relator was entitled to his release by the writ of habeas corpus.

The order of the Special Term should, therefore, be reversed and the relator discharged.

CLARKE, P. J., DOWLING and MERRELL, JJ., concur.

Order reversed and relator discharged. Settle order on notice.