THE PEOPLE on rel. MITCHELL a. THE SHERIFF OF NEW YORK.

*Supreme Court, First District; General Term, May*, 1858.

HABEAS CORPUS.—COMMITMENT.—ATTORNEY AND CLIENT.

Upon *habeas corpus* to inquire into the detention of a person committed for contempt, only two questions can be examined: firstly, the jurisdiction of the tribunal by which the relator was committed; and secondly, the form of the commitment.

Where the contempt charged is the refusal of a witness to answer a question, the commitment cannot be impeached on *habeas corpus*, merely for a supposed error in requiring the witness to answer an improper question.

An attorney having papers of his client in his possession in court, which are required as evidence in the case, is not privileged from producing them, at least for the purpose of identification.

Form of a sufficient commitment for contempt.

*Habeas corpus* to inquire into the imprisonment of John W. Mitchell.

The relator in this proceeding was an attorney and counsellor at law, and was as such retained by and acting for one McKechnie, who was the defendant in an action brought by J. H. McCunn and J. Moncrief, in the Court of Common Pleas for the city and county of New York, to recover from McKechnie the possession of a certain lot of land in that city. Upon the trial of that action before his Honor Judge Brady, one Bettz was examined as a witness for the defendant, and upon examination testified that he, Bettz, claimed the title to the land, that the defendant McKechnie was his tenant, and that he, Bettz, was defending the action as the landlord of the defendant; and being asked whether he had in his possession any old deeds, leases, or assignments relating to the land, he answered that he had received from his grantors a certain old lease and other papers, which he had kept in his possession until a few days before the trial, when he had delivered them to John W. Mitchell, his attorney, and the attorney of the defendant in the action; and being asked to produce the said old lease and other papers, he answered that he was unable to do so, because they were in Mr.

Mitchell's possession. Mr. Mitchell was then in court, acting as the attorney and counsel of the defendant on the trial. He was thereupon called as a witness by the plaintiffs, and on his examination, being asked—Have you in your possession any old leases or deeds relating to this property, placed there by Mr. Bettz? replied that he had some papers of Mr. Bettz's, but that he did not know what they were; and on being requested by the court to examine the papers and see, he declined to do so, objecting on the grounds that he was privileged from testifying as to such matters, they having come to his knowledge from his client, that he had not been subpœnaed, and that he had had no notice to produce the papers.

During a brief suspension of the proceedings pending this examination, Mr. Mitchell delivered the bundle of papers to Mr. Bettz, with a suggestion that he carry them to the office of his counsel.

After the proceedings were resumed, this fact appearing upon the continued examination of Mr. Mitchell, the plaintiffs applied for an attachment for contempt against him; but it was finally arranged that the application should be suspended, and the cause adjourned upon a stipulation that Mr. Mitchell should appear on the adjourned day with the papers in the same.

On the same day Mr. Mitchell was served by the plaintiffs with a *subpœna duces tecum*, requiring him to produce the papers on the adjourned day.

After further adjournments, the parties appeared on the 27th of May, and Mr. Mitchell being called to the stand, and asked if he had brought with him the bundle of papers in question, replied that he had. Being requested to look at them, and inform the court whether they related to the lands in suit, he refused to do so.

The court thereupon ordered the witness to be committed for ten days to the county jail, for contempt of court.

The following was the order of commitment:

*The People of the State of New York, to the Sheriff of the City and County of New York, greeting:*

*Whereas,* In a certain action pending in the Court of Common Pleas, for the city and county of New York, between John H. McCunn and James Moncrief, plaintiffs, and John McKechnie, defendant, for the recovery of a certain lot of land in the said city of New York, one John F. Bettz had been examined upon the trial thereof as a witness for the defendant, and upon such examination had sworn that he claimed the title to the said land; that the said defendant was his tenant, and that he, the said Bettz, was defending the said action as the landlord of the said defendant, and being asked whether he had in his possession any old deeds, leases, or assignments relating to the said land, and having answered that he had received from his grantors a certain lease and other papers, which he had kept in his possession until a few days before the said trial, when he had delivered them to John W. Mitchell, his attorney, and the attorney of the said defendant in the said action; and being asked to produce the said old lease and other papers, answered that he was unable to do so because they were in the possession of the said Mitchell, who was then in court, acting as the attorney and counsel of the defendant in the said trial. And whereas the said John W. Mitchell, who is a counsellor of the Supreme Court of the State of New York, and of the Court of Common Pleas of the city and county of New York, and counsel for the defendant in the said action, pending in the said Court of Common Pleas, between John H. McCunn and James Moncrief, plaintiffs, and John McKechnie, defendant, being then placed under examination, as a witness for the plaintiff in the said action, upon the trial thereof before the said Court of Common Pleas, at a special term thereof, held at the City Hall of New York, on the 22d day of May, 1858, was asked a question material and pertinent to the issue, wherein, that is to say, whether he had in his possession any deed, lease, or other papers delivered to him by one John F. Bettz. And whereas the said John W. Mitchell said he could not state whether there was any such deed, lease, or other papers, without looking at a bundle of papers then being in court and in his possession, and thereto brought by him. And whereas the said John W.

Mitchell was thereupon, during the sitting, and in the presence of the court, and by the direction of the said court, directed to look at said bundle of papers, for the purpose of answering the said question, which he refused to do; and whereas, after having so declined to make such examination, and pending the consideration, by the court, of a motion for his commitment, then to the said court made, upon the ground of such refusal, he, the said John W. Mitchell, gave the said lease and other papers to his client, with instructions to take them from the said court to the office of his counsel; and whereas the examination of the said Mitchell being by regular adjournment of the said trial, continued on the 27th May, aforesaid, he was then examined, and admitted that he had in his possession the paper thus received from the said Bettz, and he was then asked whether he would state what said papers were, and he answered that he could not, without examining them; and he was then asked whether he would look at the papers, and state what they were, so far as to identify them, and he answered that he would not; and he was then asked to look at the papers, and state what they were, and he refused to do so, though thereto required by the court; and he was further asked to produce the said papers, and though required by the court to do so, refused, and gave as his reasons for refusing, that to answer would be a breach of his privilege as attorney for the defendant; and whereas all the said questions were material and pertinent to the issue in the said action; and whereas it appears that the said John W. Mitchell, before his said examination, was duly served with a *subpœna duces tecum*, requiring him to appear on the days and at the times and places aforesaid, and produce the said papers, and has been paid his fees thereon; and whereas the said John W. Mitchell has thus been guilty of contemptuous behavior in the immediate view and presence of the said Court of Common Pleas, during its sitting, tending directly to interrupt its proceedings, and impair the respect due to its authority; and whereas the aforesaid misconduct of the said Mitchell was calculated to impair or defeat the rights of the plaintiff in the said action; and whereas the said John W. Mitchell, for the cause aforesaid, was adjudged to be guilty of contempt of the said court;— Now, therefore, you are hereby ordered to take the body of the said John W. Mitchell, and commit him to the common

jail of the city and county of New York, and there keep him in prison for the space of ten days, or until he be sooner discharged according to law.

Witness,                    JOHN R. BRADY,

Judge of the said Court of Common Pleas, of the City Hall, in the city of New York, the 27th day of May, 1858.

Signed,                    NATHANIEL JARVIS, Clerk.

Indorsed, "Allowed in open court."

Mr. Mitchell having been accordingly committed, application was made on his behalf to the general term of the Supreme Court for a writ of *habeas corpus*, which was granted. The sheriff now produced the relator in court, and made his return that the relator was in custody by virtue of that commitment.

*L. S. Chatfield*, for the relator.

*D. D. Field*, opposed.

By THE COURT.*—INGRAHAM, J.—The relator applied by petition for a *habeas corpus*, and on the return of the writ, was brought before this court by the sheriff. He returns that he holds the prisoner by virtue of and according to the tenor, manner, and command of a certain commitment for an alleged contempt, a copy of which was thereto annexed.

By such commitment it appears that in an action pending in the Court of Common Pleas for the recovery of a lot of land in the city of New York, one Bettz had been examined as a witness on the trial thereof; that he was defending the action as the landlord of the defendant; that he was asked whether he had in his possession any deeds, &c., relating to the land; that he answered he had received from the grantors a lease and other papers, which a few days before he delivered to his counsel, the relator, who was also attorney for the defendant, and that he was unable to produce the papers because they were in the possession of the said relator, who was then in court, and acting in the cause as attorney for the defendant.

It also appeared that the relator was then called as a witness,

---

* Present, DAVIS, P. J., INGRAHAM and SUTHERLAND, JJ.

and was asked whether he had such papers in his possession, delivered to him by Bettz, and replied that he could not state without examining a bundle of papers then in his possession in court; and on being directed by the court to look at such papers for the purpose of answering the question, refused to do so; and while the case was under consideration, the relator gave the bundle of papers to his client, with instructions to take them from the court.

It is also stated that on a subsequent day the said relator was again examined in the same action, the trial having been adjourned to that time, and he then admitted that he had the papers in court; and he was then asked and directed by the court to look at the papers, so far as to identify them, and to produce the papers, which he refused to do, giving as the reason that it would be a breach of privilege as the attorney for the defendant.

It is also stated that such questions were pertinent to the issue, and for such refusal the relator was adjudged by the Court of Common Pleas to be guilty of contempt.

Upon these grounds the warrant of commitment was issued.

If we were to dispose of this question upon the merits, there can be but little difficulty in sustaining the order made by that court in granting the commitment.

If a party and his counsel can transfer from the one to the other important papers required as evidence in a cause, and thereby prevent the court from compelling the production of such papers on a trial, it will not be difficult in this way to defeat the administration of justice. Such a combination between a party and his attorney might well, under the circumstances, be considered as entirely distinct from a case where the confidential communications of a client are sought to be disclosed. In no instances should such communications be disclosed by an attorney and counsel, and the court should carefully guard against any attempt to compel a counsel thus to betray the confidence of his client. But when the party and his counsel thus combine together to defeat the proper administration of justice, and seek to use this privilege as a cloak for that purpose, it is not entitled to the protection of the court. The counsel could at once have relieved himself of the responsibility by placing in his client's hands the papers called for by the court,

102          ABBOTTS' PRACTICE REPORTS.

The People on rel. Mitchell a. The Sheriff of New York.

instead of retaining possession of them, and thereby defying the power of the court.

The papers sought for were required in evidence, and, it appears, were needed for the purpose of identification. Whether the party calling for them had secondary evidence of the contents, does not appear in the warrant. For such a purpose, it was necessary to show their existence, and that they could not be produced. To this extent, even if the counsel could be protected from disclosing their contents, he was bound to produce them.

This point has been expressly adjudged in the similar case of Phelps a. Prew (24 *Eng. L. & Eq. R.*, 96), although in that case the additional fact appeared, that the counsel stated his client had directed him not to produce the deed. It was there held that the privilege of the client was not violated by requiring the attorney to produce the deed for identification. Judge WIGHTMAN says : " Compelling the production of the deed for the purpose of identification was no violation of the privilege, it being necessary to show that the attorney had the deed which he was required to produce." ELLE, J., said, "the judge, therefore, was justified in compelling the production of the deed in order that the indorsement might be looked at ;" and CROMPTON, J., says : " There was no violation of privilege in directing the deed to be shown, for the purpose of identification." And in Dwyer a. Collins (21 *Law, J. R.*, 225), it was held that an attorney of a party to a suit may be asked, and is bound to answer, whether a document which he has received from his client is in his possession, or elsewhere in the court. PARK, B., says : "The privilege does not extend to matters of fact which the attorney knows by any other means than confidential communication with his client, though if he had not been employed as attorney he would not have known them."

Thus he may prove the fact that a particular document is then in his possession and in court, for this is a fact not professionally disclosed to him. All these cases draw a distinction between answering as to the possession of the paper, and producing it for identification, and as to disclosing the contents.

See also Broad a. Pitt, *Wood & M.*, 233, and Eicke a. Nokes, *Ib.*, 303.

It is not necessary to inquire whether the contents of these

papers could have been disclosed by the counsel. That the party himself should have been required to produce them, while in court, and in the possession of his agent the attorney, would have been proper, and would have placed the responsibility on the one who should have borne the consequences of refusal.

Whether the ruling of the court was correct or not, we are of the opinion that the statute requires us to remand the prisoner in this case.

By the 40th section of the statute as to writs of *habeas corpus* (2 *Rev. Stats.*, 567), it is made the duty of the court forthwith to remand the party, if it shall appear that he is detained in custody, * * * for any contempt specially and plainly charged in the commitment, by some court having authority to commit for the contempt so charged.

And by the 42d section the court is deprived of any power to inquire into the justice or propriety of any commitment for a contempt made by any court, officer, or body, according to law, and charged in such commitment.

That the Common Pleas had jurisdiction of the action and of the parties, is not denied. That the contempt was of a court having authority to commit for the same, cannot be doubted. It is one for which any court, even not a court of record, can punish, viz., a refusal of a witness to answer a question which he is directed by the court to answer on the trial.

The commitment is regular and sufficient in form, and contains the cause of the alleged contempt plainly charged therein.

I have had occasion heretofore to examine how far a court or officer can inquire into a case of commitment for contempt in the case of Devlin.

In that case, which was before a justice of this court in a special proceeding, and not in court, it was held that only two questions could be examined—first, as to the jurisdiction, and secondly, as to the form of the commitment. That rule is applicable to this case.

It is apparent that the court had authority to examine the witness, and in the language of Judge Bronson in The People *a.* Capels (5 *Hill*, 165), if the justice had authority to inquire into the offence, the commitment could not be impeached upon *habeas corpus* for any supposed error in requiring the witness to answer an improper question. The contempt was specially

charged, and it was the duty of the judge to remand the prisoner. And again, he says: "It is evident that the Legislature did not intend to provide for a retrial by *habeas corpus* in such a case." And the only inquiry allowed in that case, as in the case of Devlin, was as to the jurisdiction of the magistrate. As that jurisdiction in the present case is undoubted, and the commitment is sufficient in form, and contains all that the statute requires, we are of the opinion that the prisoner must be remanded, and the writ discharged.

An application was made to the court yesterday for the allowance of a writ of *certiorari* in the same matter.

Although we do not feel at liberty to refuse the allowance of the writ if the relator desires it, under the provisions of the Revised Statutes, which makes it always the duty of the court or judge to allow the writ, still we suppose that the counsel will see from our views in the above opinion, that for the reasons above stated, we could not review the judgment of the Common Pleas in this matter, and that the issuing of that writ would be unavailing to the party.

The writ also should be directed to the officer having the custody of the prisoner, and not to the judge who made the order (§ 52), and the form of the writ as given in the statute (see § 30), is only to return the day and cause of imprisonment, and not the proceedings.

If the writ of *certiorari* is desired, it will be allowed in the form directed by the statute.