## SUPREME COURT.

The People *ex rel.* Andrew J. Hackley agt. John Kelly, Sheriff, &c.

A *witness* before a grand jury, is not *privileged* by the *constitution* or the common law, from answering a legal and proper question in reference to a matter pending before that body against certain aldermen in the city of New York for feloniously receiving a gift of money to influence their votes in an official capacity, (substantially under the amended charter of 1857,) on the ground that such question would disgrace him, and have a tendency to accuse him of a crime.

On *habeas corpus* this court cannot inquire into the *merits* of an order of *commitment for contempt*, but only whether the court had *jurisdiction* to make the order, and whether a *contempt* is specially and plainly charged *in the commitment*.

*New York General Term, May,* 1861.

Clerke, Leonard and Barnard, *Justices.*

The relator was committed to prison by the court of general sessions of the peace of the city and county of New York, on the 23d of April last, for a contempt of court, in refusing to answer, before the grand jury then impannelled in that court, in a matter pending before them against certain aldermen for feloniously receiving a gift of money to influence their votes in an official capacity, the following question, viz : " What did you do with the pile of bills received from Thomas Hope, and which he told you amounted to over $40,000 ?"

Hackley alleged, when the interrogatory was propounded, that any answer which he could give to that question would disgrace him, and would have a tendency to accuse him of a crime. He demurred to the question, referred to the common law rule that no man is held to accuse himself, and to the sixth section of the first article of the constitution.

The grand jury came into court, before the recorder, where Hackley attended, and made complaint of his contumacy.

The court decided that the question was a legal and pro-

per one, and that the reasons, offered by Hackley were insufficient, and ordered him to answer it; he still contumaciously refusing, the court adjudged him guilty of a criminal contempt, and committed him to prison in the county jail for thirty days. Hackley now applies, on *habeas corpus*, to be discharged from custody.

Wm. Fullerron and James T. Brady, *for the relator*.
J. H. Anthon, *Assistant Dist. Attorney, for the sheriff*.

By the court, Leonard, Justice. It was urged at the hearing, by the counsel for the applicant, that it sufficiently appeared from the order of commitment that the pile of bills amounting to $40,000 might have been given to the aldermen for the purpose indicated, and that the applicant might have been the person who made the gift; at least that such fact was so probable as to render it manifest that the privilege claimed was not unfounded.

It is an indisputable rule of the common law that a witness cannot be compelled to render an answer that will criminate or disgrace him; nor can he, by that rule, if the privilege is claimed in season, be required to disclose any fact that will form an essential link in the chain of evidence tending to convict him of any crime. ( *United States* agt. *Burr*, 1 *Robertson's R.*, 207 *to* 245; *People* agt. *Mather*, 4 *Wend. R.*, 229.)

The legislature, however, can change that or any other rule of the common law not fortified by the constitution.

The constitution contains a provision that "no person shall be compelled, in any criminal case, to be a witness against himself."

To a certain extent this constiutional provision acknowledges the existence of the common law rule referred to, and confirms it. The provision of the constitution is not so broad in its scope as the common law rule adverted to.

(*Vide opinion of Chancellor* WALWORTH, *in the court of errors,* Henry agt. The Bank of Salina, 5 Hill's R., 526.)

The commitment furnishes evidence that the complaint under investigation before the grand jury was against certain aldermen, members of the common council, for feloniously receiving a gift of money under an agreement that their votes should be influenced thereby in a matter pending before them in their official capacity. It thus appears that the offence under investigation was substantially that which is described in the fifty-second section of the amended charter of the city of New York, passed in 1857. (*Vide* vol. 1, *Session Laws,* 1857, *p.*, 894–5.)

At least, it appears quite as distinctly that such was the offence which the grand jury were investigating, as do the facts upon which the applicant claims his privilege to be exempt from giving the evidence required.

Assuming that such was the subject before the grand jury, and that there is reasonable ground to believe that the prisoner might have been a *particeps criminis* in the same matter then under examination, he was protected by the same fifty-second section of the charter from having any use made of his testimony in any prosecution, civil or criminal, against himself. The common law rule above referred to was, as to him, in the event of his giving evidence which would show him to be an offender under that section, fully abrogated. Such was the intention of the legislature, and such is the effect of the provision referred to.

The fifty-second section of the charter provides, in substance, that in case any person shall promise or give any money, &c., to any member of the common council, &c., to influence his official action, or in case any member, &c., shall accept any such gift, under an agreement that his action shall be influenced in his official capacity, he shall, on conviction, be disqualified from holding office under the charter, and shall be punished by imprisonment and fine. " Every person offending against either provision of this

section shall be a competent witness against any other per-
son offending in the same transaction, and may be com-
pelled to appear and give evidence before any grand jury
or in any court, in the same manner as other persons; but
the testimony so given shall not be used in any prosecution
or proceeding, civil or criminal, against the person so testi-
fying."

The constitutional privilege of a witness to be exempt
from inquiry in respect to criminal matters as to which he
may be an offender, as before observed, is much narrower
than the common law rule.

The act of 1837, in respect to usury, contains a similar
provision in respect to persons committing usury, which
was thereby made a misdemeanor, punishable by fine and
imprisonment; the offender was required in civil actions to
disclose the usury, but was protected from the use of his
testimony against him before a grand jury, or on the trial
of any indictment against him.

The same question came before the late Chancellor WAL-
WORTH, in the case of *Perrine* agt. *Striker*, (7 *Paige R.*,
598,) which is here presented. That question arose under
the act to prevent usury, passed in 1837, above referred to.
A bill was filed in chancery under that act to compel an
alleged offender to make discovery of the usury taken by
him on a promissory note, upon which the offender had
brought an action at law.

The objection was raised by demurrer. The chancellor
declared, after referring to the constitutional provision
then in force, which was the same as that contained in the
present constitution, that he was not prepared to say that
the case before him was a criminal one within the meaning
of the constitution.

The chancellor considered the act in question before him
entirely constitutional, although the action was dismissed
on another ground. The act against usury has been in full
force for more than twenty years, and offenders against its

provisions have been frequently compelled to answer in respect to the usury committed, but no court has ever yet pronounced the provision compelling parties to disclose the usury, to be unconstitutional, although the offence was punishable by fine and imprisonment. The offender clearly gives evidence against himself in a case of usury, but it is not given in a criminal case. The common law rule would protect him in his privilege as a witness, whether he were called on to testify in a civil or criminal case, were it not abolished by the statute. The disclosure is just as pernicious to the witness, who discloses that he has committed the offence of usury, or some fact that may tend to accuse him of that offence, where the evidence is given in a civil case, as it would be if given in a criminal case.

It is true that Hackley has been required to give evidence in a criminal case, but it was not in a case against himself. In order to shield himself from giving evidence under the provision of the constitution two facts must concur; the matter or case under trial or investigation must be criminal, and it must also be against himself.

The common law rule protects parties from being required to give evidence against themselves, in civil as well as in criminal actions. The legislature have abolished it, as they had authority to do. The constitution, however, forbids the legislature to pass any law to compel a person in a criminal case to give evidence against himself. But no one who is not a defendant can claim the exemption under the provision of the constitution.

Had the framers of the constitution intended to furnish as comprehensive a rule as is claimed by the counsel for the prisoner, the provision would require a change, substantially to this effect: No person shall be compelled to give evidence which may be used in a criminal case against him.

The subject has been considered thus far upon the hypothesis of the counsel for the prisoner, as to the facts, except

only that they do not admit that the case under investigation arose under § 52 of the charter.

I am not prepared to say, however, that the facts do appear so fully as to entitle this court to question the authority of the court of sessions to pronounce the decision which they did.

The offence may have been barred by the statute of limitations, and in that case the prisoner would not be entitled to claim the benefit of the common law rule. (*Close* agt. *Olney*, 1 *Denio R.*, 319.) Or it may be that such facts came before that court as enabled them to see that the prisoner's claim of privilege was unfounded for some other cause.

The case is not before us for review, nor can we reverse, alter or modify the order which commits Hackley to jail. We are expressly prohibited by statute from inquiring into the merits of the decision made by the recorder. (3 *R. S.*, 887, § 57.)

We may consider whether the court of general sessions had jurisdiction to make the order, and whether a contempt is specially and plainly charged in the commitment. (§ 55.)

If the decision or the commitment fail in these respects the imprisonment is illegal, and the applicant must be discharged.

The counsel for the applicant insist that the commitment does not show that any contempt was committed, because the burden of making it to appear from the face of the process that the prisoner was not entitled to the privilege which he claimed rested on the tribunal making the inquiry, in relation to which the alleged contempt arose, inasmuch as he had asserted his privilege, and that fact fully appears.

I am unable to find any authority for such a position.

The authorities relied on are *People* agt. *Lohman*, (2 *Barb. R.*, 216,) and *People* agt. *Rector*, (19 *Wend. R.*, 569.)

These cases arise on bills of exception, and they hold that where the witness asserts his privilege, the party claim-

ing his evidence must show that the witness was not legally entitled thereto, or an exception to the ruling of the judge in favor of the claim of the witness will not be well taken.

They are not authority for requiring any such statement to be contained in the process of commitment, as has been claimed.

The commitment would be necessarily lengthy if it were to contain a statement of all the proof which the court of sessions had before them, and upon which their decision was pronounced.

It was not necessary to have stated in the process the reason given by the prisoner for his refusal to answer. But the unnecessary statement of the reason did not render it necessary to rebut, by a recital of facts proved, these reasons which that court decided to be unfounded. (*People* agt. *Cassels*, 3 *Hill R.*, 164; *People* agt. *The Sheriff*, 29 *Barb. R.*, 622.)

It is also insisted that the commitment is illegal; because the contempt did not occur in the presence of the court, but in the grand jury room, before the jury as an independent body; and that the presentation of the matter in open court was a violation of the oaths of the grand jurors to keep secret the counsels of their fellows and their own.

The jurisdiction of the court of general sessions, as provided by statute, is, among other things, to inquire by the oaths of good and lawful men of the county, of all crimes and misdemeanors committed or triable in the county, as well as to hear, determine and punish. (3 *R. S.*, 5*th ed.*, 302, § 5, *subdivisions* 1 *and* 2.)

These duties are to be performed through the medium and assistance of grand and petit jurors. The grand jury is an adjunct of the court as well as the petit jury.

The grand jury are not complete, as an official body, for the performance of duty without the direction, and in some respects the control, of the presiding judge of the court into which they are summoned. They are to receive their

charge or instructions as to their duty from the court, and when indictments are found by them they return them into court.

The indictments do not become operative until they are returned into and become part of the records of the court. The delinquencies and misconduct of the grand jurors are also punishable by the court as contempts. They are organized, and their foreman is appointed by the presiding judge of the court. The witnesses are brought before them on subpœnas issued from the court into which the grand jurors are summoned to serve; and the practice prevails, on proof of the service of the subpœna, and the non-attendance of the witness before the grand jury, for the court, and not the grand jury, to punish the witness as for a contempt.

The grand jury are summoned to serve in the court of general sessions, (3 R. S., 1013, § 10, 5th ed.,) to enable that court to perform the duty enjoined on them of inquiring as to all crimes, &c. When summoned, sworn and organized, the grand jury are a constituent part of the court, for the performance of the functions and duties devolved upon the court, as much as a body of twelve petit jurors impannelled for the trial of a person charged with crime. The oath administered to the grand jurors, to keep secret the counsel of their fellows and themselves, is not to obstruct the administration of justice. The grand jurors do not necessarily disclose any secret of their body by reporting to the court the contumacy of a witness. When the witness has been brought before the grand jury to testify, he is for the time, in the custody or under the control of the court and the grand jury. He stands in the same relation to the court as a witness on the stand before the court and a petit jury.

The witness has no right to leave the presence of the grand jury after he has been sworn and placed under examination, without their permission.

The court of general sessions have the authority, by necessary implication, to compel the immediate attendance

in their presence of any delinquent or contumacious witness, after he has been sworn by the grand jury, in a case under investigation before them.

The jurisdiction and authority of the court of general sessions and of the grand jury, to inquire of all crimes, &c., would be frustrated without the exercise in practice of this power and control over witnesses.

In my opinion the grand jury or the court of general sessions might lawfully compel the prisoner to attend in open court, and there, in his presence, make complaint of his conduct, and there, after hearing what he might say in answer to the complaint, adjudge and decide whether or not he was guilty of a contempt.

In the present case the prisoner attended before the court, voluntarily or otherwise, together with the grand jury, and I think it may be fairly inferred that he admitted the facts in respect to which the complaint was made, and persisted in his refusal to answer the question stated in the process.

We think it is not necessary that it should appear on the process of commitment how the question was relevant to the matter under investigation, or how the answer might affect the prisoner. It is sufficient that the court decided that the question was a proper one, and that the witness was in contempt for refusing to answer it.

There is no evidence before us of a want of jurisdiction or authority to pronounce the decision which the court of general sessions did pronounce, and there is no irregularity or defect on the face of the commitment.

The writ of *habeas corpus* must be discharged, and the prisoner remanded to the custody of the sheriff.