# DAVISON'S CASE.

*Supreme Court, First District; At Chambers, November,* 1861.

POWERS OF OFFICER ON HABEAS CORPUS.—COMMITMENT BY COURT
OF GENERAL JURISDICTION.—CONTEMPT.

If it appears, on the return to a writ of habeas corpus, that the prisoner is detained
in custody for a contempt specially and plainly charged in the commitment by
some court having authority to commit for the contempt charged, it is the duty
of the officer conducting the proceeding forthwith to remand the prisoner into
custody.

In a commitment for contempt by a court of general jurisdiction, all the prelim-
inaries to warrant the imprisonment need not be set out.

The proper remedy, in case of irregularities in the proceedings by which a party
has been adjudged guilty of contempt by a court of general jurisdiction, is by
motion in the court in which the judgment was rendered.

Application on habeas corpus for discharge from imprison-
ment.

Judgment was rendered in this action, on a report of referee,
that the defendants specifically perform their contract with the
plaintiffs, and convey to them a house and lot in Twenty-sixth-
street, New York (now estimated to be worth $12,000), and for
which the plaintiffs had principally paid.

This judgment was rendered by the court on the 7th day of
May, 1856, and was not appealed from. A certified copy of
this judgment was personally served on the defendants, with a
summons to attend before the referee, Mr. Cambreleng, to carry
into effect the decree by executing the conveyance. On the
27th of June, 1856, the parties attended before the referee, Mr.
Cambreleng. The plaintiffs, with their counsel, offered to per-
form their part of the decree, and requested the defendants, who
were then and there not present, but were represented by coun-
sel, to perform their part of the decree.

In excuse of performance, the defendants set up, by their affi-
davits, matters alleging their inability to comply. The referee
overruled their excuses, and they then refused to comply. The

referee, on the 30th of June, 1856, made a special report to the court of what transpired before him on the 27th of June, 1856, annexing the defendants' affidavits.

On that report, and on the judgment-roll, Mr. Justice Davies granted an order for the defendants to show cause why they should not be punished as for a contempt. As the defendants were absent from the State, so that service of papers could not be made, the judge ordered the motion-papers to be served on their attorneys. After the papers were so served, an adjournment was procured by defendants' attorney, to enable him to communicate with his client, which he did, and he was instructed by Erastus Davison to defend the motion. That motion was heard and fully discussed before Mr. Justice Davies, who overruled the objection that the papers were not personally served, and who, on the 30th day of December, 1857, made an order of commitment of the defendants until they should comply with the decree and convey the premises in controversy.

On this motion, before Mr. Justice Davies, the same excuses were set up as before the referee, but Mr. Justice Davies overruled them, and adjudged the defendants to be guilty of a contempt.

No appeal was taken from this order.

The defendants were absent for nearly three years, until, in November, 1860, Erastus Davison was arrested and committed to Eldridge-street prison, where he lay at the time of the present application.

A writ of habeas corpus was sued out to bring him before Mr. Justice Ingraham, at chambers. The sheriff returned, he held him under the warrant of commitment. The creditors, at whose suit he was imprisoned, made a special return of facts. To these returns traverse was put in, but the following facts were admitted in the return, by not being denied in the traverse.

1. The rendition of the judgment on the 7th of May, 1856, adjudging that the defendants perform specifically.

2. That the summons to attend before the referee, to carry into effect the decree, and the decree, were personally served on the defendants.

3. The making the order by Mr. Justice Davies, directing the service of the order to show cause to be made on the defendants' attorneys, in lieu of the defendants, who could not be found.

4. The making the order by Mr. Justice Davies, directing the defendant to be punished for a contempt, and that on the hearing of that motion, objection was taken that the defendants had not been personally served, which was overruled.

5. That subsequently a motion was made before Mr. Justice Barnard to be discharged from the arrest, on the ground of inability to comply with the order, and his denial of the same. No appeal was taken from his order.

6. That a motion was also made before Mr. Justice Sutherland, on the grounds claimed on this habeas corpus, that the commitment was irregular, and that Mr. Justice Sutherland denied that motion.*

The defendant claimed, however, in his traverse, that Judge Sutherland did not adjudicate on this question. After taking some proofs under the traverse, the counsel for the sheriff claimed that the court could not go behind the commitment.

*A. J. Vanderpoel*, for the sheriff.—I. The commitment for contempt was issued by a court of general jurisdiction having authority to commit for contempt, and the contempt is specially and plainly charged. 1. The provisions of the statute in substance are at 3 Rev. Stat., 887, 5 ed ; 2 Ib., 567, 1 ed. 2. The commitment under which the relator is held is very full and special, and plain in charging the contempt. There is no necessity of alleging that the prisoner was before the court. No facts need be set forth, except the adjudication that the party was in contempt. If the presence of the prisoner was necessary, it will be intended that he was present, rather than that he was, when absent, adjudged guilty of wilfully disobeying the order of the court. 3. As to courts of general jurisdiction, the maxim is "*omnia presummitur esse rite acta*," for the very good reason given by Powys, J., in Requia *a.* Paty (2 *Ld. Raym.*, 1108), " because it is intended that we understand what we do." 4. The commitment is much more special than that under which Israel Kahn was remanded by Justice Bosworth (11 *Abbotts' Pr.*, 147). When the case of Burdel *a.* Colman was before the House of Lords (5 *Dow.*, 199), the Lords, through

---

* The case of Pitt *a.* Davison (12 *Ante,* 386) contains a report of that application of the prisoner to be discharged.

Lord Eldon, put this question to the Judges:—"Whether, if the Court of Common Pleas, having adjudged an act to be a contempt of court, had committed for the contempt under a warrant stating such adjudication generally, without the particular circumstances, and the matter were brought before the King's Bench, by return to a writ of habeas corpus, the return setting forth the warrant stating such adjudication of contempt generally—whether, in that case, the Court of King's Bench would discharge the prisoner, because the particular facts and circumstances out of which the contempt arose were not set forth in the warrant." The Judges delivered their unanimous opinion that in such a case the Court of King's Bench would not liberate. The House thereupon adopted the opinion and affirmed the judgment below. In accordance with this rule is Case of Sheriff of Middlesex (11 *A. & E.*, 273; 39 *E. C. L. R.*); People *a.* Nevins (1 *Hill*, 154); Yates' Case (4 *Johns.*, 315; S. C. 9 *Ib.*, 394); Bass Crosby's Case (3 *Wils.*, 183); *Ex-parte* Kearney (7 *Wheat.*, 38, 43); 2 Barb. Ch., 696.

II. The statute has prescribed the duty of the court in the most imperative terms, adding a prohibition against the re-examination on habeas corpus of the adjudication for the contempt. No matter what other facts may be returned, the statute does not make any exception when enjoining this duty and adding its prohibition. Relief must be obtained against an irregular conviction in some other manner. It was intended to give to the commitment a conclusive effect. In *Ex-parte* Kearney (7 *Wheat.*, 38, 43), Justice Story says—"If this were an application for a habeas corpus after judgment, on an indictment for an offence within the jurisdiction of the Circuit Court, it could hardly be maintained that this court could revise such a judgment or the proceedings which led to it, or set it aside and discharge the prisoner. There is, in principle, no distinction between that case and the present—for when a court commits a party for a contempt, their adjudication is a conviction, and their commitment, in consequence, is execution." *Ex-parte* Beatty (12 *Wend.*, 229) arose under the new and express authority given by the 46th section of the Non-imprisonment Act (*Laws of* 1831, 396).

III. It is unnecessary to bring the party into court by an attachment, when the prosecutor elects to proceed under the

practice of procuring an order to show cause. (Albany City Bank *a.* Schermerhorn, 9 *Paige*, 372; People *a.* Nevins, 1 *Hill*, 154.) Where the party elects to proceed by an order to show cause, it is for the court granting the order to adjudge whether the service was or was not proper. A justice acting as Supreme Court commissioner cannot review that decision on habeas corpus. The commissioner not having power to review, in this collateral way, the adjudication as to the sufficiency of the service of the order to show cause, is bound to intend that the court of general jurisdiction had every fact proven essential to a regular conviction. While correct and accurate practice dictates full recitals in an order of any kind, showing what papers were before the court, no statute or common-law rule renders this, or any recital, imperative, or renders void the order. On the other hand, if the order recited that certain papers and proofs were before the court on the motion, the party, if the case came up on appeal, or even in any collateral way, would be allowed to show that many other papers and proofs were before the court, and he could have the same benefit from them as if they were recited in the order. (See *Ex-parte* Beatty, 12 *Wend.*, 229, 232, 233.)

IV. The only other suggestion made by the counsel for the relator, which was pressed by him as entitled to any weight, arises from the fact that, following the order of the court, the attorney has made out a joint commitment, and strictly adhered to the adjudication of the court in the mandatory part of the mittimus, and the relator claims that each of the defendants is to stand committed until the two perform a certain act. 1. This objection, if well founded, cannot be taken advantage of here. It could only be raised on appeal, when the facts on which the court made the order might be re-examined. The court may have determined that these defendants had conspired together, so to complicate the subject-matter each was required to perform, as to render him responsible for the acts, and doings, and consequences thereof of his co-defendant. This may have been erroneous on the part of the court, but that decision cannot be reviewed here. The habeas corpus is not an appellate proceeding. 2. This construction of the order is *hypercritical*. It is sacrificing the substance and clear meaning to the letter. *Qui hæret in litera, hæret in cortice*, is as applicable to the construc-

tion of an order or judgment of a court as to an act of the Legislature. It is not at all likely, with our present views of the law, that any court would tolerate such a practical construction of the order; but decisions, seemingly more strange than this, have been made by courts, on mature deliberation, which have stood the test of criticism and attack. No express provision of law is hereby violated, even upon a strict construction of the order. 3. We refer again to that class of cases which, in the language of CRESSWELL, J., hold, "The court had undoubted authority to issue the writ; and it is equally beyond a doubt that *we* have no authority to inquire whether it was issued regularly or not." (*In re* Andrews, 4 *M. G. & S.*, 226 ; 56 *E. C. Law R.*)

` *James R. Whiting*, for the prisoner.—I. If the misconduct alleged in the mittimus is a contempt of the court, then it was a contempt of the general, not of the special term. The special term of the court has no power to punish a contempt, not committed against it, but against a superior authority. (*Jud. act*, 3 *Rev. Stat.*, 5 ed., 278 ; *M. P.*, 196, § 196.)

II. The mittimus is bad because the special term did not acquire jurisdiction of the person of the prisoner, before his commitment. The party sought to be punished must be either voluntarily, or by compulsion, personally brought before the court. This is essential to jurisdiction. (People *a.* Nevins, 1 *Hill*, 154 ; 5 *Ib.*, 285 ; 5 *Johns.*, 115.) This must be by attachment. (*Ib.*; 4 *Black. Com.*, 287 ; 19 *Barb.*, 475 ; 9 *Paige*, 372 ; 3 *Hill*, 663, *note.*) An attachment may issue in the first instance with or without notice; but no commitment can take place until the party charged is afforded an opportunity of being heard in his defence. (3 *Rev. Stat.*, 5 ed., 850 ; *M. P.*, 535, §§ 5, 12, 17, 18 ; see *re* Ryan, 2 *Code R.*, 69 ; *Ex-parte* Whitechurch, 1 *Atk.*, 57.) In People *a.* King (9 *How. Pr.*, 97), an attachment for non-payment of money, and commitment, may issue in the first instance—not so in other cases.

III. A mittimus cannot go in the first instance, except in cases where the disobedience is the non-payment of money ordered by the court to be paid; and in such cases it is in the nature of an execution. (People *a.* King, 9 *How. Pr.*, 97.)

IV. The mittimus is irregular and insufficient. 1. Because

it does not show on its face that the court had jurisdiction of the person of the defendant. 2. Because it does not show that it was in the power of the prisoner to do the thing required. 3. Because it simply states that the prisoner wilfully refused, without stating that he could do the act. 4. It does not show that the defendant had any knowledge of the proceedings to punish him. 5. On the contrary, it shows he was ignorant of all the proceedings. 6. It orders him to be kept until he shall pay a certain mortgage to a third person not a party to the record of judgment, and so is bad. 7. It directs him to be kept in close custody until *another* person shall make the conveyance. 8. If Joseph Davison shall not convey, then Erastus is to be kept in custody until he, Joseph, does. 9. It directs them to "convey," instead of executing a conveyance. 10. The decree and mittimus both declare that the prisoner had no title as against the plaintiffs, the Pitts—that the deed from Joseph to Erastus was void.

V. For irregularities in a commitment, the prisoner is entitled to be discharged on habeas corpus. 1. For irregularities on a commitment from the Court of Chancery, prisoner discharged. (*Ex-parte* Beatty, 12 *Wend.*, 229.) 2. Relief afforded by habeas corpus against excessive bail. (Jones *a.* Kelly, 17 *Mass.*, 116.) 3. On insufficient affidavit to hold to bail on a capias *ad respondendum.* (Nelson & Gray *a.* Cutter & Tyrell, 3 *McLean*, 326.) 4. It may be done either way, on habeas corpus or on motion. (United States *a.* Jenkins, 18 *Johns.*, 305.) 5. The process, if valid on its face, may protect the officer, although it may be shown to be void for want of jurisdiction. (Savacool *a.* Boughton, 5 *Wend.*, 170 ; Jones *a.* Hughes, 5 *S. & R.*, 299 ; Paul *a.* Van Kirk, 6 *Binney*, 123 ; Taylor *a.* Alexander, 6 *Ohio*, 147.)

VI. The case is not *res adjudicata.* No court or judge has passed upon the questions involved on this habeas corpus. 1. Nothing was done before Judge McCunn—the prisoner was not brought before that judge—the case had no status before him. (Cone *a.* Chandler, 11 *Mass.*, 83.) 2. The return shows that nothing *came* before Judge Barnard except the inability of the prisoner to comply with the judgment. 3. So before Judge Ingraham. The questions now raised were not passed upon by him. 4. Justice Sutherland did not pass upon the questions

now agitated; besides, he gave leave to renew the motion. Where several questions arise in a cause, and the opinions agree in regard to all of them, and the other members give a silent vote, then all the questions are deemed *decided*. Where the court consists of several judges, two or more of whom deliver opinions, and all arrive at the same result, but for different *reasons*, this is not conclusive. (James *a.* Patten, 2 *Seld.*, 9.)

*Nelson Chase* and *D. McMahon*, for the creditor, at whose suit defendant was imprisoned.—I. It is not proper to attempt to review the order of Mr. Justice Davies, granted on the 30th December, 1857, in this collateral way by a writ of habeas corpus. (2 *Rev. Stat.*, old p. 568, § 42; 3 ed., p. 664, § 57.) 1. The order of Justice Davies was within the province of a court of equity to make, in order to carry its decrees into force. The only way to review that exercise of power was by an appeal therefrom. A court of equity have power to enforce decrees. (Ludlow *a.* Lansing, *Hopk.*, 231; 2 *Rev. Stat.*, 4 ed., 355, § 56; *Ib.*, 4 ed., 768, § 1, subd. 8; *Code R.*, § 285.) 2. It was not necessary that the defendant should have been personally served with notice of the proceedings to punish him, as for a contempt.

The Statute of Contempts contemplates two modes of adjudging a party guilty of contempt. 1. By preliminary arrest and putting interrogatories to him. 2. By order or motion to show cause. The latter course was here adopted. The defendants absenting themselves from the State, the court prescribed the mode of service, viz., by service on the attorney. This the court could do. (See concluding part of Justice Sutherland's opinion: also, Watson *a.* Fitzsimmons, 5 *Duer*, 629; Case of Yates, 4 *Johns.*, 317; Yates *a.* Lansing, 9 *Ib.*, 395.) This objection, as appears by the return, was taken on the 30th December, 1857, by the defendants' counsel, and was overruled by Justice Davies. It is therefore *res adjudicata* in this case, and cannot be disturbed, even if the learned judge erred. (Higbie *a.* Edgarton, 3 *Paige*, 253.) In the latter case, it was held that the way to review it was by appeal. It must be recollected, also, that the judgment-roll, also summons to attend before the referee, were personally served on the defendants.

II. The commitment was in all respects regular. 1. The

judgment was in equity for a specific performance. It was not appealed from, and required the defendants to convey by a good and satisfactory title. 2. The defendants did not comply with the judgment so entered, though a certified copy was personally served on them, with a summons to attend before a referee to carry decree into effect; and the court, on an order to show cause, after hearing counsel in opposition, who urged a defective service, made the order adjudging them in contempt, committed them. It is too late now to disturb that order, not having been appealed from. 3. The statute does not require imperatively that written interrogatories must be put; an order to show cause is enough. (Watson *a.* Fitzsimmons, 5 *Duer*, 629 ; Yates' Case, 9 *Johns.*, 395, 396.) Court of Chancery might always commit on affidavits without first putting interrogatories. (Yates' Case, *Ib.*) 4. Judge Davies' order of December, 1857, made on opposition by Davison's counsel, was a direct adjudication on the subject of the defendant's contempt. If the learned judge did not pursue the course by preliminary attachment to bring up the party and administer interrogatories in the first instance, instead of by order to show cause, his order directing the proceedings to be taken in another way could have been appealed from and reversed. It cannot be collaterally impeached, on the ground of his irregularity. (Higbie *a.* Edgarton, 3 *Paige*, 253.)

III. The denial of the motion by Justice Barnard, in January, 1861, which was made to relieve the defendant, was conclusive also, it not having been appealed from. 1. The motion to be relieved from arrest, on the ground of inability, implied necessarily that the imprisonment was regular, and that there were no grounds of irregularity about it. 2. The denial of such motion, not appealed from, is conclusive. A party is bound in the first instance to set up his objections of irregularities, before he moves on the merits, or to obtain leave to renew on irregularities. (Willett *a.* Fayerweather, 1 *Barb.*, 72; Bellinger *a.* Martindale, 8 *How. Pr.*, 113.)

IV. The denial of the motion by Mr. Justice Sutherland, which was made by the defendant to be relieved from this arrest on the ground of irregularity, is also conclusive, and on these points he finds in favor of the plaintiffs. This is *res adjudicata* in the case. And even though other irregularities may

be found in the process, yet the defendants are precluded now from asserting them, by reason of the motion before Justice Sutherland, and his denial of them.

Moreover, where the process is defective, it must lie in a matter of substance making it utterly void (*i. e.*, not amendable), before the court can review it on habeas corpus. (2 *Rev. Stat.*, 3 ed., 664, § 56, subd. 3; old p. 568.)

V. After these various motions and rulings, the defendants cannot avail themselves of their difficulties by habeas corpus. There must be some fixed, stable ground, and end of litigation. The original decree cannot be here attacked. (2 *Rev. Stat.*, 3 ed., 663, § 55; old p. 567, old § 40.)

INGRAHAM, J.—The prisoner applies, on habeas corpus, to be discharged from imprisonment.

It appears that he was committed by the justice presiding at special term for a contempt, in not complying with a judgment of this court.

The commitment is proven in the case, and was made by the Supreme Court at special term. It states the contempt, and the cause for which the prisoner was adjudged to be in contempt specially, and there is no doubt that the cause of commitment was one within the powers and authority of the court. And the objection is taken that it is the duty of the officer, on habeas corpus, to remand the prisoner without any examination of the merits.

The statute directs that the officer shall forthwith remand the prisoner, if it appear that he is detained in custody for any contempt, specially and plainly charged in the commitment, by some court having authority to commit for the contempt charged, and it prohibits an examination into the justice or propriety of any commitment for a contempt charged in such commitment.

It appears to me that these provisions are conclusive upon any officer acting under the provisions of this statute.

All the requisites stated in the statute to prevent the action of the officer are to be found in this commitment, both as to the plain statement of the cause of contempt charged, and as to the power of the court to punish for such a contempt.

The evident intent of the statute was, whenever these facts

appeared, to prevent any officer out of court from reviewing the acts and judgment of the court in cases of contempts, and to leave to the court where the contempt had been committed the entire control of the case.

The cases referred to appear to settle this question. In People *a.* Nevins (1 *Hill*, 154), the judge says: "Where a cause is assigned in substance (in the commitment), even if it be without technical words, I do deny that the commissioner has any power to interfere."

He saw that the prisoner had been committed by the court for not paying money, and he was bound to know he had no jurisdiction.

The same case also holds that in commitments by a court of general jurisdiction, all the preliminaries to warrant the imprisonment need not be set out in the commitment. So also in Kahn's Case (11 *Abbotts' Pr.*, 147 ; S. C., 19 *How. Pr.*, 475), Chief-justice Bosworth held that, if the commitment plainly charged a contempt for misconduct, such as the court had power to punish, it was the imperative duty, as required by statute, to remand the prisoner, notwithstanding there were informalities in the commitment. In People *a.* Hicks (15 *Barb.*, 153), the general term of this district held that a commitment for contempt could not be discharged, if it appeared that the court or officer committing had power to require the act to be done, and had authority to enforce his decision by imprisonment. So in People *a.* Cassels (5 *Hill*, 164), Justice Bronson says, where the contempt is specially charged, it was the duty of the judge to remand the prisoner. In People *on rel.* Mitchell *a.* The Sheriff (7 *Abbotts' Pr.*, 96), I had occasion to examine this question at length, and came to the conclusion as above expressed.

This view of the case renders it unnecessary to hear or examine the case upon the merits. That there may have been irregularities in the proceedings is possible, but the remedy is by motion, and not by an appeal to the writ of habeas corpus. If there are any such errors, the court has full power to relieve on such application, and the relief can be quite as speedy and effectual, unless the party, by his own laches, has lost his right to relief.

The prisoner must be remanded. and the writ ...